FILED

2016 Aug-08  PM 02:25
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| A.M.S., a minor, by and through<br>her legal guardian,<br>MURLENE DUNN,<br><br>Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN,<br>Commissioner of Social Security,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 7:15-cv-00402-LSC |

## MEMORANDUM OF OPINION

## I.    Introduction

The plaintiff, A.M.S., a minor, by and through her legal guardian, Murlene Dunn, appeals from the decision of the Commissioner of Social Security Administration ("SSA") regarding the disability claim of her now deceased father, Larry Dunn ("Dunn"). Dunn timely pursued and exhausted his administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).[1]

---

[1] Dunn applied for Disability Insurance Benefits ("DIB") and Supplement Security Income ("SSI") benefits on May 27, 2011, with a protective filing date of May 24, 2011. He alleged disability beginning July 31, 2010. The Administrative Law Judge denied Dunn's claim on April 26, 2013. Review by the Appeals Council was requested and while the claim was pending before

Dunn was forty-eight years old at the time of the Administrative Law Judge's ("ALJ's") decision, and he had an eleventh grade education (tr. at 26), as well as training and work experience as a sheet metal installer and construction worker. (Tr. at 65-66.) Dunn claimed that he became disabled on July 31, 2010 (tr. at 123), because of lower back problems, carpal tunnel syndrome, chronic pain, back spasms, and pain with walking. (Tr. at 198.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB or SSI.  *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA").  *See id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *See id.* §§

---

the Appeals Council, Dunn died. A.M.S., via her legal guardian, Murlene Dunn, was substituted as the party to this claim on November 18, 2014. After accepting new evidence and adding it to the administrative record, the Appeals Council denied review.

404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  The decision depends on the medical evidence contained in the record.  *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step.  *See id.* §§ 404.1520(e), 416.920(e).  The fourth step requires the evaluator to determine

whether the plaintiff has the RFC to perform the requirements of his past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's impairment or combination of impairments does not prevent him from performing his past relevant work, the evaluator will make a finding of not disabled. *See id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the plaintiff can perform other work, the evaluator will find him not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work, the evaluator will find him disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ found that Dunn met the insured status requirements of the Social Security Act through December 31, 2014. (Tr. at 25.) He further determined that Dunn had not engaged in SGA since the alleged onset of his disability, July 31, 2010. (*Id.*) According to the ALJ, Dunn's carpal tunnel syndrome, status post carpal tunnel release and low back pain, status post laminectomy and discectomy were considered "severe" based on the requirements set forth in the regulations. (*Id.*) However, the ALJ found that these impairments neither met nor medically equaled any of the listed impairments in 20

C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 26.) The ALJ did not find Dunn's allegations to be totally credible, and the ALJ determined that Dunn had the RFC to perform sedentary work within some limitations: he should have the ability to perform work sitting or standing at his discretion; he can occasionally climb, balance, stoop, crouch, crawl, and use foot controls; he should do no more than frequent handling and fingering; he should avoid concentrated exposure to vibrations; and he is precluded from work around unprotected heights. (*Id.*)

According to the ALJ, Dunn was unable to perform any of his past relevant work, he was a "younger individual age 45-49," had a "limited education," and was able to communicate in English, as those terms are defined by the regulations. (Tr. at 30.) Because Dunn could not perform the full range of sedentary work, the ALJ enlisted Mr. Hare, a vocational expert ("VE"), who used Medical-Vocation Rule 201.19 as a guideline for finding that there were a number of jobs in the national economy that Dunn was capable of performing, such as a toy stuffer, a wire wrapper, and an eyeglass frames polisher. (Tr. at 31, 68.) The ALJ concluded his findings by stating that Dunn "has not been under a disability, as defined in the Social Security Act, from July 31, 2010, through the date of this decision." (Tr. at 31.)

## II.    Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied.  *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)).  This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions.  *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner.  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)).  "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'"  *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if this Court finds that the

proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)).  Moreover, failure to apply the correct legal standards is grounds for reversal.  *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III.   Discussion

Plaintiff alleges that the ALJ's decision should be reversed and remanded for three reasons: A) the ALJ improperly discounted the opinion of Dunn's treating physician; B) the ALJ did not properly credit Dunn's testimony; and C) the Appeals Council erred when it concluded that the decision of the ALJ was supported by the administrative record as a whole.

### A.   Treating Physician's Diagnoses

Plaintiff contends that the ALJ improperly discounted his treating physician's opinion. Dr. Bobby Hill had been treating Dunn since August 31, 1998. (Tr. at 278-296). On October 22, 2012, Dr. Hill completed a questionnaire stating

that Dunn had "chronic neck pain syndrome due to C-spine disease," that his prognosis was "poor," and that Dunn was not a malingerer. (Tr. at 362-63). Likewise, Dr. Hill opined that "during a typical workday" Dunn would "frequently" experience pain "severe enough to preclude the level of attention and concentration needed to perform even simple work tasks." (Tr. at 363). Also, Dr. Hill stated that Dunn could only sit for 15 minutes at one time, that he could only stand for 10-15 minutes at one time before needing to sit down, that he could only stand or walk less than 2 hours in a full 8-hour working day, that he could only occasionally "look down (sustained flexion of neck)," "turn head right or left," or "look up," and could only "rarely" hold his head in a "static position." (Tr. at 364-65). Dr. Hill also opined that Dunn could only rarely twist, crouch, or climb ladders, could occasionally stoop (bend) and climb stairs, but that Dunn did not have any significant limitations in reaching, handling, or fingering. (Tr. at 364-66). Finally, Dr. Hill stated that Dunn's impairments would likely "produce 'good days' and 'bad days,'" that Dunn could be expected to miss work "about three days per month" "as a result of [his] impairments or treatment," and ultimately that "the patient is to limit *all* activities of daily living that exacerbates his condition." (Tr. at 366-67 (emphasis added)).

A treating physician's testimony is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford*, 363 F.3d at 1159 (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted). The weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). Furthermore, "good cause" exists for an ALJ to not give a treating physician's opinion substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips*, 357 F.3d at 1241 (citing *Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record).

The Court must also be aware of the fact that opinions such as whether a claimant is disabled, the claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on

9

issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). The Court is interested in the doctors' evaluations of the claimant's "condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440. Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, as it is the ALJ who bears the responsibility for assessing a claimant's residual functional capacity. *See, e.g.*, 20 C.F.R. § 404.1546(c).

The ALJ gave Dr. Hill's opinion "little weight" because 1) it did not define the terms "frequently or occasionally," 2) it contained two inconsistencies, and 3) the last treatment note in the record before the ALJ was from over a year and a half prior to when Dr. Hill filled out the questionnaire. (Tr. at 29.) With specific regard to the inconsistencies, the ALJ found Dr. Hill's opinion that Dunn's condition would "frequently" impair his ability to attend work and concentrate enough to "perform even simple work tasks" was inconsistent with Dr. Hill's opinion that Dunn was yet "capable of low stress jobs." (Tr. at 29; *see also* 363.) Likewise, the ALJ found Dr. Hill's opinion to be inconsistent when he "indicated the claimant needed a job that permitted shifting positions at will, but then stated he would need

15-20 minute breaks every 15-20 minutes." (Tr. at 29.) Additionally, according to the ALJ, "The gap in treatment undermines Dr. Hill's opinion." (Doc. 10 at 7.)

The plaintiff argues that the ALJ erred in giving little weight to Dr. Hill's opinion for three reasons, but none provide support for a contention that the ALJ lacked good cause to discredit the doctor's opinion.

First, Plaintiff points out that the doctor's questionnaire does in fact define the terms "frequently" and "occasionally." (Tr. at 363; Doc. 9 at 10.) Indeed, the record clearly shows that the key terms "frequently" and "occasionally" are defined as "34% to 66% of an 8-hour working day" and "6% to 33% of an 8-hour working day," respectively. (Tr. at 363). Thus, this basis for the ALJ's decision is unsound. However, this Court finds that the error is harmless given the weight of the record and findings below.

Second, Plaintiff argues that there is only the appearance of inconsistency in the questionnaire because "the ALJ took one comment out of context and misstated another." (Doc. 9 at 7-11.) However, Dr. Hill opined that Plaintiff's symptoms would "frequently" impair his ability to attend and concentrate, but that he was capable of low stress work. (Tr. at 363). "Frequent" means 34% to 66% of the workday. (Tr. at 363). Therefore, Dr. Hill's opinion that Plaintiff's symptoms would preclude him from being able to concentrate 34% to 66% of the day would

prevent full-time work. (Tr. at 363). Inexplicably, however, he then opined that Plaintiff was incapable of working. (Tr. at 363.) Dr. Hill also noted that Plaintiff had exhibited decreased grip strength bilaterally when asked about symptoms, but then opined that Plaintiff had no significant manipulative limitations. (Tr. at 362, 366). These statements are all inherently inconsistent and undermine the supportability of his opinion. Further, Dr. Hill's opinion is inconsistent with his own treatment records. Dr. Hill often noted stiffness and tenderness in the lower back with decreased range of motion and positive straight leg raise testing, but his exams were otherwise unremarkable. (Tr. at 278-79). Dr. Hill did not note gait problems, neurological or sensory deficits, or motor strength deficits. In fact, he said Plaintiff was neurologically intact in April 2011. (Tr. at 278).

Third, the ALJ discounted Dr. Hill's opinion because "The statement is dated October 25, 2012; however, the last doctor's note was from April 16, 2011. There is no indication that the claimant has continued for ongoing treatment with Dr. Hill." (Tr. at 29; *See* Tr. at 278). The length and frequency of the treatment relationship is certainly relevant in evaluating a treating source's opinion. *See* 20 C.F.R. § 404.1527(c)(2). The Plaintiff argues that, while correct at the time, the ALJ's judgment on this matter is now inconsistent with the weight of the evidence since "additional records were submitted to the Appeals Council which

demonstrate that Dr. Hill continued treating Dunn after April 16, 2011." (Doc. 9 at 10.) However, those records were not before the ALJ, and Plaintiff has provided no explanation as to why the records dated before the ALJ decision were not entered into the record before the ALJ issued his decision. Further, as explained in further detail below, those records do not change the administrative result.

For these reasons, this Court finds that the ALJ's judgment is supported by substantial evidence in the record and constitutes good cause for discounting the treating physician's opinion.

### B.    Plaintiff's Allegations of Pain

Plaintiff asserts that the ALJ's evaluation of his subjective complaints of pain was improper. This Court disagrees. Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). To establish disability based upon pain and other subjective symptoms, "[t]he pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Dyer*, 395 F.3d at 1210 (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)).

The ALJ is permitted to discredit the claimant's subjective testimony of pain and other symptoms if he articulates explicit and adequate reasons for doing so. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also* Soc. Sec. Rul. 96-7p, 1996 WL 374186 (1996) ("[T]he adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements."). Although the Eleventh Circuit does not require explicit findings as to credibility, "'the implication must be obvious to the reviewing court.'" *Dyer*, 395 F.3d at 1210 (quoting *Foote*, 67 F.3d at 1562). "[P]articular phrases or formulations" do not have to be cited in an ALJ's credibility determination, but it cannot be a "broad rejection which is 'not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole.'" *Id.* (internal quotations omitted). "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Jarrell v. Comm'r of Soc. Sec.*, 433 F. App'x 812, 814 (11th Cir. 2011) (internal citations omitted). Finally, the ALJ may consider the following factors when evaluating a claimant's subjective complaints of pain and impairment: 1) the claimant's daily activities; 2) the location, duration, frequency, and intensity of the pain; 3) any precipitating and aggravating factors; 4) medications taken to

alleviate pain, including side effects and effectiveness; 5) treatment received to relieve pain; and 6) any other measure the claimant uses to relieve pain. *See* 20 C.F.R. § 404.1529(c)(3).

Here, the ALJ complied with the Eleventh Circuit's "pain standard" and found that Dunn's complaints of pain and impairment were not credible or supported by the record, writing: "There is sufficient objective medical evidence from which to determine that the claimant has some degree [of] hand pain and degenerative disc disease with back pain, however, the limiting effects as alleged by the claimant are not supported by the record." (Tr. at 28).

Substantial evidence supports the ALJ's credibility finding. Specifically, the ALJ noted that while Dunn did "undergo surgery for carpal tunnel release . . . the chart notes indicated good results such that the claimant was released to return to work within a month of the surgery . . . . There are no further mentions of carpal tunnel syndrome throughout the remainder of his follow-up presentations in 2010." (*Id*). An ALJ may properly consider a claimant's course of "conservative" treatment as evidence that contradicts a claimant's subjective complaints of disabling symptoms. *See Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996). In June 2011, Plaintiff exhibited mild Tinel's sign on the right hand and numbness in the middle finger on tapping over the right carpal tunnel. (Tr. at 28, 330).

However, his grip strength was normal and he denied that he had weakness, that he dropped things, or that he had trouble with fine manipulation. (Tr. at 28, 328, 330). The ALJ found that, based on the evidence from before the alleged onset date, the objective evidence supports some limitation from carpal tunnel syndrome and therefore limited Plaintiff to frequent, as opposed to constant, fingering and handling. (Tr. at 28-29).

The only aspect of the ALJ's credibility determination that the plaintiff takes issue with is the ALJ's reasoning that Dunn's daily activities undermined his allegations of disabling pain symptoms. (Tr. at 25-26). The ALJ noted that Dunn was able to use his hands to pay bills and handle money. (Tr. at 28, 229). He had no trouble with personal care. (Tr. at 227). He was also able to take care of household duties because he was divorced and taking care of his daughter alone. (Tr. at 62-63). He took his daughter to the bus stop daily, picked her up, shopped for groceries, cooked, cleaned, went to church, and went to the doctor. (Tr. at 56, 62-63, 229, 328). Dunn told the consultative physician that he could perform fine motor skills like buttoning shirts and that he had no difficulty performing household chores. (Tr. at 328). Contrary to the plaintiff's assertion, while participation in daily activities of short duration does not necessarily disqualify a claimant from disability, that does not mean it is improper for the ALJ to consider

the daily activities at all. *See Makjut v. Comm'r of Soc. Sec.*, 394 F. App'x 660, 663
(11th Cir. 2010); *Robinson v. Astrue*, 365 F. App'x 993, 998 (11th Cir. 2010)(citing
*Lewis*, 125 F.3d at 1441); *see also* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)
(specifically listing daily activities as one of the factors to consider in evaluating a
claimant's credibility).

Plaintiff argues that Dunn had to take significant breaks while performing
these tasks and she alleges that "there is nothing in the ALJ's recitation of Dunn's
daily activities that is inconsistent with his testimony, or with disability in general."
(Doc. 9 at 14.) However, this Court finds that the ALJ was within his discretion
when he gave weight to Dunn's daily activity level and there is more than
substantial evidence in the record to support the ALJ's credibility determination.
The ALJ specifically addressed Dunn's allegations of pain in his opinion, and
provided explicit and reasonable reasons for rejecting Dunn's testimony. (Tr. at
28-29.)

## C.    The Appeals Council's Review

After the ALJ issued his unfavorable decision, Plaintiff submitted additional
treatment records from Dr. Hill (dated from July 26, 2011 through June 18, 2013),
and a Certificate of Death showing that Dunn died of acute respiratory failure on
September 7, 2013. (Tr. at 368-72). The Appeals Council denied review after

considering whether the ALJ's decision was contrary to the weight of all the evidence and ultimately found that the new evidence did not provide a basis for changing the ALJ's decision. (Tr. at 1-2, 4-5). This Court finds that the additional evidence submitted to the Appeals Council does not render the ALJ's denial of benefits erroneous.

According to the Commissioner's regulations, when new material evidence is submitted to the Appeals Council:

> The Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

20 CFR § 404.970(b). Thus, the Appeals Council may deny review after consideration of new evidence if the new evidence does not undermine the ALJ's decision. *Id.*

"[A] federal district court must consider evidence not submitted to the administrative law judge but considered by the Appeals Council when that court reviews the Commissioner's final decision denying Social Security benefits." *Ingram v. Commissioner of Soc. Sec. Admin.,* 496 F.3d 1253, 1258 (11th Cir. 2007).

Specifically, when the Appeals Council has denied review following submission of new evidence, a reviewing court must consider whether the new evidence renders the ALJ's decision erroneous and unsupported by substantial evidence. *See id.* at 1261-62.

As an initial matter, the treatment records dated after the ALJ's decision on April 26, 2013, and the September 2013 death certificate, have no bearing on this case because they offer no information about Plaintiff's condition on or before the ALJ's decision. (Tr. at 368-69). In other words, they are not chronologically relevant. *See* 20 C.F.R. § 404.970(b); *Wilson v. Apfel*, 179 F.3d 1276, 1278-79 (11th Cir. 1999) ("While [the physician's] opinion one year later may be relevant to whether a deterioration in [claimant's] condition subsequently entitled her to benefits, it is simply not probative of any issue in this case."). Therefore, the treatment records dated June 6, 2013, June 18, 2013, and May 14, 2013, and the death certificate, do not affect the ALJ's decision.

With regard to the remaining records from Dr. Hill, as noted previously, the ALJ gave little weight to the treating physician Dr. Hill's opinion partially because of the gap in his treatment records, writing: "There is no indication that the claimant has continued for ongoing treatment with Dr. Hill." (Tr. at 29). Plaintiff alleges that "the evidence submitted to the Appeals Council demonstrates that

Dunn was treated in Dr. Hill's office six times between April 2011 and October 25, 2012" and therefore "this reason for rejecting Dr. Hill's opinion is erroneous." (Doc. 9 at 15-16).

However, this Court finds that while the new evidence offered by Plaintiff does fill in the gap of Dr. Hill's treatment records, it does not render the ALJ's decision erroneous and unsupported by substantial evidence in the record. The records show that Dunn "continued to experience carpal tunnel pain and weakness" (doc. 10 at 17; *see* tr. at 368-71), and that on July 27, 2011, Dr. Hill noted that Dunn complained of "increasing pain involving the lower back. [But] otherwise he is doing well." (Tr. at 371).  However, on March 5, 2012, Dunn reported that "his back is much better." (Tr. at 370.) Thus, the records show nothing that would undermine the ALJ's decision.

Plaintiff also argues that the new records submitted to the Appeals Council "document an additional severe impairment . . . [*i.e.,*] neck pain from cervical spine disease" and therefore "the ALJ's decision is erroneous." (Doc. 9 at 16.) However, this Court finds that the ALJ's adverse decision is still supported by substantial evidence in the record as a whole. These new records show that Dunn "complains today of neck pain" on July 26, 2011 (tr. at 371), that Dunn complained of "increasing pain involving the neck for approximately 2 to 3 weeks that has not

been responsive to his usual pain-relief med" and was advised to "avoid propping the neck" on October 24, 2011 (*id.*), that on December 19, 2011, Dr. Hill reported that Dunn complained of "increasing pain involving the neck, but otherwise he is doing well" (*id.*), that on February 13, 2012, Dunn complained of "neck pain" (*id.*), that on March 5, 2012, Dunn complained of "increasing pain involving the left neck" but that his general exam was "unremarkable" (tr. at 370), that Dunn reported to Dr. Hill that his neck pain "flares occasionally" on July 11, 2012 (*id.*), that on July 18, 2013, Dunn's general exam was "unremarkable" except for "complaints of pain in his right neck" (tr. at 368), and that Dr. Hill did not mention any neck pain in his report on October 1, 2012 (tr. at 370), March 22, 2013, or May 14, 2013. (Tr. at 369).

Thus, while the ALJ had not previously discussed Plaintiff's neck pain, that was because Plaintiff never alleged neck pain as an impairment in his disability paperwork. Moreover, remand to consider new allegations of neck pain is unnecessary, as these records show only that Plaintiff had some decreased range of motion or tenderness in his neck, not that he had any actual, specific functional limitation caused by his neck pain.

Accordingly, this Court finds that the additional evidence submitted by Plaintiff to the Appeals Council does not undermine the ALJ's adverse decision

and that there is still substantial evidence in the record as a whole to support the ALJ's decision.

## IV.   Conclusion

Upon review of the administrative record, and considering all of Plaintiff's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** AND **ORDERED** ON AUGUST 8, 2016.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

160704